UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA REED-BAGLIA, | ) | CASE NO. 5:09CV352 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| COUNTY OF SUMMIT, et al. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on a motion by Defendant Advanced Correctional Healthcare, Inc. (ACH) for judgment on the pleadings. (Doc. No. 23.) The motion is fully briefed and is ripe for decision.

**I.     Background**

Plaintiff Tamara Reed-Baglia (Plaintiff) brings this civil rights action against ACH, Defendant Summit County (Summit County), Sheriff Drew Alexander, and various unnamed John Does employed by ACH and Summit County. In her Amended Complaint, Plaintiff raises federal claims under 42 U.S.C. §§ 1983 and 1985, as well as state law claims for intentional and negligent infliction of serious emotional distress. (*See* Doc. No. 11.) These claims arise out of the treatment she received while incarcerated in the Summit County Jail. Plaintiff asserts that ACH is a private corporation which contracted with Summit County to provide medical services for the jail (*Id*. at ¶ 11) and,

along with Summit County, is responsible for the alleged substandard medical care she received.

According to Plaintiff, she turned herself into the Tallmadge Police Department on February 5, 2007, and was subsequently charged with attempting to fill the prescription of another individual. (*Id*. at ¶¶ 14-15.) At the time of her arrest, Plaintiff had been prescribed the drug Xanax. While she advised employees of the jail that she was to receive her prescribed medication, and filed out a form regarding the medication, no medicine was ever administrated to Plaintiff while she was held in the jail. (*Id*. at ¶ 19.)

Plaintiff alleges that the failure to administer her medications resulted in her experiencing symptoms associated with withdrawal. She claims that for most of her month long stay at the jail she was unable to sleep or care for herself, she suffered from the dry heaves and diarrhea, and she experienced hallucinations. (*Id*. at ¶¶ 20-23.)

Plaintiff filed the present lawsuit on February 13, 2009. She claims that employees of Summit County and ACH were deliberately indifferent to her medical needs in violation of the U.S. and Ohio Constitutions. Plaintiff raises federal statutory claims against Defendants under 42 U.S.C. § 1983 for failure to train and supervise, and under § 1985 for conspiracy.

ACH has filed a motion for judgment on the pleadings. In its motion, ACH maintains that all claims should be dismissed against it because Plaintiff has failed to name an individual employee or agent of ACH that violated Plaintiff's constitutional rights. Because no employee has been identified, ACH argues that it cannot be held vicariously liable and should be dismissed. While Plaintiff did allege in the Amended

2

Complaint that various unknown employees of ACH, identified as John Does, were responsible for the substandard medical care she received in Summit County's jail, it is undisputed that Plaintiff has never replaced the designated John Does defendants with indentified individuals. It is further undisputed that the time for adding parties to the action has passed.[1]

## II. Standard of Review

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. The standard for review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Rough Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)).

When reviewing a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although this is a liberal pleading standard, it

---

[1] Pursuant to the Court's Case Management Plan and Trial Order (CMPTO), the deadline for adding parties was June 30, 2009. (*See* Doc. No. 9.) While the Court issued an amended CMPTO on September 30, 2009, the date for adding parties was not extended. (*See* Doc. No. 17.)

requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 444 (6th Cir. 2007) (quoting *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671-72 (6th Cir. 2006)).

III.     **Discussion**

In support of its motion, ACH relies upon the recent decision by the Ohio Supreme Court in *Nat'l Union Fire Ins. Co. v. Wuerth*, 122 Ohio St. 3d 594 (2009). The underlying suit was a malpractice action against an attorney and his law firm that originated in the United States District Court for the Southern District of Ohio. There, the district court ruled that the attorney was entitled to summary judgment because the malpractice and misrepresentation claims were barred by Ohio's malpractice statute of limitations, Ohio Rev. Code § 2305.11(A). *Nat'l Union Fire Ins. Co. v. Wuerth*, 540 F. Supp. 2d 900, 911 (S.D. Ohio 2007). In light of this finding, the district court went on to hold that the attorney's law firm could not be held directly liable for malpractice, and could not be held vicariously liable without a finding that the attorney was liable. *Id.* at 914.

On appeal, the United States Court of Appeals for the Sixth Circuit certified the following question for consideration by the Ohio Supreme Court:

> Under Ohio law, can a legal malpractice claim be maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance?

122 Ohio St. 3d at 596.  The Ohio Supreme Court broke this question into two separate inquires: one, "whether a law firm may be *directly* liable for legal malpractice—i.e., whether a law firm, as an entity, can commit legal malpractice—and two, whether a law firm may be held *vicariously* liable for malpractice when none of its principals or employees are liable for malpractice or have been named as defendants." *Id*. at 596 (emphasis in original).

Ohio's high court answered the first question in the negative. Drawing upon previous decisions involving the practice of medicine, the court found that only licensed individuals, and not firms or other entities, can practice law. Because a law firm cannot engage in the practice of law, the court concluded that a law firm cannot directly commit legal malpractice. *Id*. at 598.

Turning to the second question, the Court based its analysis upon well settled law that provides that "although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable." *Id*. (citing agency cases). Under these cases, if no liability is assigned to the agent, "it logically follows that there can be no liability imposed upon the principal for the agent's actions." *Id*. at 599 (quoting *Comer v. Risko*, 106 Ohio St. 3d 185, 189 (2005)). Applying these principals of agency law, the Court ruled that "a law firm has no vicarious liability unless at least on principal or employee of the firm is liable." *Id*. at 600.

ACH seeks to apply the holding in *Wuerth* to the present case to support a finding that it cannot be held liable where no particular employee has been identified as

5

liable for violating Plaintiff's constitutional rights. ACH's reliance on the decision in *Wuerth* is misplaced because Plaintiff is not seeking to hold ACH vicariously liable for its employee's conduct. Rather, she seeks relief from ACH based upon its own acts that she alleges violated her constitutional rights.

It is well settled that a governmental entity or a private entity acting under color of law[2] cannot be held liable under 42 U.S.C. § 1983 for an employee's conduct on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Rather, a plaintiff must show that the government entity, or a private entity clothed in governmental authority, itself is the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). In order to establish governmental liability, a plaintiff must demonstrate that an officially executed policy, or the tolerance of a custom, led to or caused the deprivation of a constitutionally protected right. *Collins*, 503 U.S. at 122.

There are at least four avenues a plaintiff may take to prove the existence of a policy or custom that caused the alleged constitutional violation. The plaintiff can turn to (1) the governmental entity's legislative enactments or official polices; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Doe v. Claibourne County*, 103

---

[2] The Court makes no determination at this time as to whether ACH can be considered a state actor for purposes of § 1983 liability.

F.3d 495, 507 (6th Cir. 1996); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

In the present case, Plaintiff alleges that ACH violated her constitutional rights by failing to adequately "train and supervise responsible persons at the Summit County Jail, when it was foreseeable that persons with needs similar to Mrs. Reed-Baglia would be incarcerated, and would require some medical treatment to prevent them from becoming ill due to prescription medication withdrawal." (Am. Compl. at ¶ 34.) To succeed on a failure to train or supervise claim, a plaintiff must prove: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis*, 455 F.3d at 700. *See Plinton v. County of Summit*, 540 F.3d 459, 463 (6th Cir. 2008). In short, the alleged failure to train or supervise must be directly connected to the resulting constitutional violation.

To be sure, inadequate training or supervision, no matter how deficient, cannot lead to municipality liability under § 1983 without an underlying constitutional violation. "A municipality or county cannot be held liable under § 1983 absent an underlying constitutional violation" by any of its officers or other employees. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004); *see, e.g., Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (in a § 1983 action based upon a city's alleged policy of condoning the excessive use of force, the Court found that it was "inconceivable" to hold the municipality liable where a jury had acquitted the police officer of using excessive force). As such, Plaintiff will need to demonstrate that employees or other representatives

of ACH violated her constitutional rights before the Court, on a motion for summary judgment, or a jury, at trial, can reach the issue of ACH's liability.

While there must be an underlying constitutional violation, a § 1983 action may proceed against a municipality even where no liability can attach to the officer or employee. Indeed, cases under § 1983 may proceed solely against the municipality, following grants of qualified immunity to the individual officers. Where an officer is entitled to qualified immunity due to the fact that the law was not clearly established at the time he acted, "there is nothing anomalous about allowing such a suit to proceed when immunity shields the individual defendants."[3] *Watson v. Kansas City,* 857 F.2d 690, 697 (10th Cir. 1988) ("While a government official who violates the constitution will be protected if his or her actions were reasonable in light of clearly established law and the information the official possessed when he or she acted, municipalities enjoy no such shield.") *See Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000); *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005).

"A municipality also may be liable even when the individual government actor is exonerated, including where municipal liability is based on the actions of individual government actors other than those who are named as parties." *Epps v. Lauderdale County, Tenn.*, 45 Fed. Appx. 332, 335 (6th Cir. 2002) (Cole, J., concurring). *See Praprotnik v. St. Louis*, 798 F.2d 1168, 1173 n.3 (8th Cir. 1986), rev'd on other

---

[3] In contrast, where the grant of qualified immunity is based upon a finding that the officer did not violate the plaintiff's constitutional rights, municipal immunity would not be appropriate because such a finding would be equivalent to a decision on the merits of the plaintiff's claim. *Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993) (citing *Siegert v. Gilley*, 111 S. Ct. 1789, 1793-94 (1991), overruled in part on other grounds by *Pearson v. Callahan*, 129 S. Ct. 808 (2009)).

grounds, 485 U.S. 112 (1988) (Verdict against City in § 1983 action not irreconcilable with verdict in favor of named individual defendants where persons other than the named defendants were responsible for the injury sustained by the plaintiff). *See also Lincoln v. Bd. of Regents of University System*, 697 F.2d 928, 934-36 (11th Cir. 1983) (In an action under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, verdict against board was not inconsistent with verdicts in favor of the individual defendants where liability could have been found in another official not named in the complaint). Thus, liability under § 1983 can attach to a governmental entity even in the absence of a named individual defendant found to have been responsible for the alleged constitutional violation.

In opposition to ACH's motion, Plaintiff underscores the fact that she did, indeed, name individual ACH employees as co-defendants using the "John Doe" designation. Where a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may file a complaint that names the unknown defendant as "John Doe." "However, simply identifying an unknown defendant in the complaint by the pseudonym of John Doe […] is not enough to commence a civil action against a fictitious party […]." *Smith v. City of Chattanooga*, 2009 WL 3762961 (E.D. Tenn. Nov. 4, 2009) (citing *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968)). Though discovery is now complete, Plaintiff has failed to further amend her complaint to add or join any "John Does" by their true names. The time for amending the pleadings has past, and Plaintiff has not filed a motion under Fed. R. Civ. P. 15 for leave to amend. Moreover, Plaintiff has not timely effected service of process upon the individual John Doe defendants identified in the Amended Complaint. Thus, while Plaintiff may proceed

against ACH, even in the absence of a finding of liability of any individual employee, she may not continue to purse relief from unidentified John Does.[4] *See, e.g., Smith*, 2009 WL 3762961, at *6 (In § 1983 action, unidentified John Doe defendants were dismissed for failure to identify them by their real names and effect service of process upon them as required by Fed. R. Civ. P. 4(m)).

In sum, the Ohio Supreme Court decision in *Wuerth* finds no application in the present case because Plaintiff does not seek to hold ACH vicariously liable for her injuries. By her Amended Complaint, Plaintiff has attempted to tie ACH's alleged failure to train and supervise directly to the deprivation of her constitutional rights. With respect to the claims against ACH, the Amended Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As such, judgment on the pleadings in favor of ACH would be inappropriate.[5] Plaintiff cannot, however, continue to maintain claims against unidentified, and unserved, John Does, and their

---

[4] In light of the fact that Plaintiff has not otherwise identified any individual employee of AEH by name as having violated her constitutional rights, the Court questions, however, whether she will be able to demonstrate that any deficiency in training or supervision of ACH employees led to the deprivation of her constitutional rights. Such a determination, however, is properly reserved for the summary judgment stage.

[5] The same analysis identified above with respect to § 1983 is also applicable to Plaintiff's state tort claims, as Plaintiff seeks to hold ACH liable for the emotional distress caused by its alleged failure to train and supervise. Nonetheless, the Court is skeptical that the state tort claims can be maintained against ACH or the County, given the immunity granted governmental entities by Ohio Rev. Code § 2744.02. *See Wilson v. Stark County Dept. of Human Serv*s., 70 Ohio St. 450, 452 (1994). This issue, too, should be explored at summary judgment.

dismissal at this time is warranted.[6]

### IV. Conclusion

For the foregoing reasons, ACH's motion for judgment on the pleadings (Doc. No. 18) is **DENIED**. All John Does identified in the Amended Complaint are **DISMISSED** from the action.

**IT IS SO ORDERED**.

Dated: February 24, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] ACH also argues that Plaintiff has failed to plead sufficient facts to support a *Monell* claim against it. This argument fails for two reasons. First, ACH raises this for the first time in its reply. *See United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993) ("Issues raised for the first time in a reply brief are not properly before" the court). Second, the Amended Complaint does allege that Plaintiff's injuries were the result of Defendants' failure to train. (Am. Compl. ¶ 34.) While a governmental entity cannot be held liable under § 1983 for an employee's conduct on the basis of respondeat superior liability, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), a plaintiff may establish governmental liability by demonstrating that an officially executed policy, or tolerance of a custom led or caused the deprivation of a constitutionally protected right. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). The failure to adequate train employees may constitute a policy so long as the municipality's failure to train "evidences a 'deliberate indifference' to the rights of its inhabitants […]." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). While the Court is skeptical that Plaintiff will be able to meet the threshold showing of a clear and persistent pattern of deliberate indifference to pretrial detainees to have put ACH on notice that any training it was providing was inadequate, such considerations are properly reserved for summary judgment. At this stage in the proceedings, the Court finds that Plaintiff has adequately pled a claim for *Monell* liability.

11